DECISION AND JUDGMENT ENTRY
This case is on appeal from the April 27, 2000 judgment of the Lucas County Court of Common Pleas, Probate Court, which held that the consent of the natural mother, appellant, was not necessary regarding the adoption of her daughter, Peyton, by appellees. On appeal, appellant asserts the following single assignment of error:
 "The Trial Court Erred in Holding That The Natural Mother Failed to Communicate Without Justifiable Cause and That Her Consent Was Thus Not Required In The Adoption of Her Biological Daughter By Appellees."
Appellees petitioned to adopt Peyton (born April 9, 1998) on December 2, 1999. Appellees asserted that the consent of appellant is not required since she failed to communicate with and support the child for the prior year. Appellant was notified of the proceedings on March 2, 2000 and filed her objection to the adoption on March 3, 2000 stating that appellees interfered with her attempts to communicate with her child. Following the April 19, 2000 hearing on the petition, the court found that appellant's failure to support her child was justified. However, the court also found that she had not communicated with her daughter since November 1998. Therefore, the court concluded that appellant's consent to the adoption proceedings was unnecessary.
At the hearing, Rebecca and Richard F. testified as follows. Rebecca is appellant's sister. Rebecca described her relationship with her sister as the best of friends. Rebecca also testified that she had always helped appellant whenever she was in trouble. Rebecca testified that she was there when Peyton was born eight weeks premature and addicted to prescription drugs. Because of appellant's pending incarceration, appellees agreed to care for Peyton when appellant was incarcerated ten days after the child was born. Her incarceration had been delayed pending Peyton's birth.
Appellees submitted telephone records and testified that appellant called collect from prison ten times in April, seventeen times in May, and about twice a month until August 22, 1998. No phone calls occurred after that date. Appellees both testified that they had not said or done anything to prevent or discourage appellant from contacting them. However, appellees did not contact appellant to determine why she had stopped calling.
Appellees acknowledged that appellant had also written letters to appellees. Rebecca testified that she recalled responding, but could not recall how many times she had responded. Appellees testified that from December 2, 1998 until December 2, 1999, they never received any correspondence from appellant. However, on cross-examination appellees recalled that they had received a Christmas gift from appellant through the Angle Tree Organization in November 1998.
Appellant's mother testified that appellant had not contacted her during the one-year period prior to the filing of the adoption petition even though appellant had listed her mother as an emergency contact with appellant's physicians during her pregnancy. However, appellant's mother admitted that she had moved to Arizona while appellant was incarcerated and had not directly given her a new address or telephone number. Appellant's mother also testified that she never contacted her daughter during her incarceration. However, appellant's mother testified that she would have helped appellant if possible.
Appellant testified that she lived with appellees for two weeks while she was expecting. She further testified that she had relied upon Rebecca F.'s assistance in the past, but could not always depend upon her help. Appellant was incarcerated from April 19, 1998 until February 6, 2000 for forging prescriptions. Before she left, she made arrangements to have appellees care for her daughter and make medical decisions for her.
Appellant further testified that she called appellees often when she was incarcerated in Lucas County, but was more restricted after May 1998 regarding telephone calls because she was in the Marysville prison. She testified that during her incarceration she wrote to appellees thirty-five to forty times prior to December 1998 requesting pictures, information, and copies of her child's and Rebecca Folck's birth certificates so that they could be approved for visitation. Appellees never provided any of the requested information and only responded once in June 1998. Appellant testified that Rebecca F. had stated once that she did not think it was a good idea to bring the child to the prison. Considering her premature birth, appellant did not expect to see her daughter immediately, but did want to make arrangement for a later visit. Appellant had to rely upon a friend to get the birth certificates for her. Afterward, appellant called appellees on August 22, 1998 to tell them that she had the birth certificates and they argued. Richard F. admitted on cross-examination that he called appellant's friend and told him that he should not have obtained a copy of Rebecca F.'s birth certificate without her consent and warned him that he should not get involved again.
Appellant testified that she attempted to call appellees after August 22, 1998, but was unable to get through. Because of the prison phone system, she could not hear if appellees were rejecting the collect call or if there was some technical problem. However, she was able to call others. Appellant tried to get her grandmother, who lives in Toledo, to help, but she did not want to get involved. Her grandmother would not send pictures of the child, but appellant did arrange to have someone visit her grandmother to see the pictures and tell appellant about them.
Appellant submitted into evidence a copy of her letter sent in November 1998 to the judge who had issued the temporary custody order. She had requested that he help her obtain visitation with her daughter. She also submitted a copy of the court's response of December 28, 1998 indicating that it had forwarded the request to appellees' attorney. Appellees never responded.
Appellant testified that she contacted the Angel Tree Organization and arranged for a gift to be delivered to her daughter for Christmas 1998. The representative later told her that no one was home to accept the gift personally, but it was delivered. Appellant testified that she wrote letters to her daughter as well, but all were sent prior to December 2, 1998. However, she did admit that she never purchased cards from the prison commissary to send to her daughter.
Furthermore, appellant testified that she also wrote a letter in February 1999 to the Lucas County Children Services to see if they could assist her. That office was unable to help her and directed her to the juvenile court. She spoke with a public defender in June or August 1999 who contacted juvenile court twice on her behalf to determine whether a motion for permanent custody was filed. However, the attorney indicated that she was not really permitted to help with non-criminal matters. Appellant testified that her case manager also made six or seven contacts with the juvenile court on her behalf. Appellant testified that she did not know that adoption was possible through the probate court. A parenting coordinator indicated that appellant could not do much from prison and would have to wait until she was out.
Appellant testified that she did not contact her mother or other sister because they did not have a good relationship. Appellant did not even feel welcome in her mother's home and had never been invited there for holidays. She knew that her mother was close to her sister, Rebecca F., and did not expect her mother to help. Appellant also did not contact her other sister because she lives in Arizona.
Ed DeAngelo, a psychology assistant at the Ohio Reformatory for Women, testified that he counseled appellant from October 1998 until her release. They talked about her problems at the prison and her personal problems regarding her inability to see her daughter and her plans to return to the community and establish a home for her daughter.
Appellant argues on appeal that the court's factual finding that she did not communicate with her child in the one-year period prior to the filing of the adoption petition is contrary to the manifest weight of the evidence. Alternatively, she contends that even if this court finds that there was sufficient evidence to establish that she did not communicate with her child during this period, the finding that her lack of communication was unjustified is not supported by the evidence.
Pursuant to R.C. 3107.07(A), a natural mother's consent to the adoption of her natural child by another is not required if the mother "has failed without justifiable cause to communicate with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." The petitioner for adoption bears the burden of proving this fact by clear and convincing evidence. In re Adoption of Bovett
(1987), 33 Ohio St.3d 102, paragraph one of the syllabus. While the natural parent bears the burden of going forward with evidence that she had justifiable cause for failing to communicate with her child, the burden of proving that the cause was not justified remains on the petitioner. In re Adoption of Bovett, supra, at paragraphs once and two of the syllabus and In the matter of the adoption of Weir (Sept. 29, 1989), Lucas App. No. L-89-073, unreported.
Several legal principles in this area guide our decision: First, the law requires that there be absolutely no communication for the statutory provision to be satisfied. In re Adoption of Holcomb (1985),18 Ohio St.3d 361, paragraph two of the syllabus. Second, the parent must take every avenue to protect his parental rights. In the matter ofthe adoption of Weir, supra. Third, incarceration alone is not a justifiable reason for failing to contact the child. In the Matter ofthe Adoption of Black (Nov. 29, 1985), Sandusky App. No. S-85-21,
unreported, and In the Matter of the Adoption of Buswell (May 25, 1979), Erie App. No. E-78-33, unreported. Fourth, interference by the custodial party must be significant to justify the parent's lack of communication.In re Adoption of Holcomb, supra at paragraph three of the syllabus andIn the Matter of the Adoption of Johnson (Aug. 15, 1980), Wood App. No. WD-80-4, unreported.
The probate court's determination must be supported by clear and convincing evidence. In re Adoption of Holcomb, supra. Therefore, on appeal, this court will reverse the trial court's decision only if it is contrary to the manifest weight of the evidence. In re Adoption of Masa
(1986), 23 Ohio St.3d 163, 166, and In re Adoption of Bovett, supra at 106.
To support her claim that she did communicate with her child during the period of December 2, 1998 until December 2, 1999, she points to the court's December 28, 1998 letter indicating that it had passed on appellant's November 24, 1998 letter requesting visitation to appellees. Furthermore, she points to the fact that she arranged for the Angle Tree Organization to deliver a gift to her child for Christmas 1998. Appellant contends that appellees' testimony that they received the gift in November 1998 is not credible in light of the fact that they did not acknowledge it until questioned about it on cross-examination. However, even if the court accepts that the gift was delivered in November, appellant argues that it was intended to be a Christmas gift and, therefore, constitutes a communication with her child after December 2, 1998. Finally, she contends that appellees' self-serving testimony that appellant never called is insufficient evidence standing alone to meet the clear and convincing standard of proof that she did not communicate with her child after December 2, 1998.
Alternatively, appellant contends that the evidence at least establishes that appellees substantially interfered with her attempts to communicate with her child. Appellant points out that her child was barely eight months old as of December 2, 1998 and, therefore, any communication with her had to be through appellees. She argues that prior to that time and after this date, she aggressively sought visitation with her daughter, but was unsuccessful. She also contends that her ability to call her daughter was solely in the hands of appellees who could refuse to accept the call and appellant would never know why the call did not go through. Furthermore, she contends that once she had an indication that appellees were not accepting calls, she tried to seek help from the court, other agencies, and a relative. However, none of them were able to help her.
This proceeding does not present the issue of the best interest of the child or of who would be the better parent. The only issue is whether appellant forfeited her rights as a natural parent by unjustifiably failing to communicate with her child during the one-year period prior to the filing of the adoption proceeding.
Upon a review of the evidence, we conclude that the trial court's finding that there was no communication during the requisite one-year period was contrary to the manifest weight of the evidence. Appellant did arrange for a Christmas gift to be delivered to her child in 1998. Furthermore, her request for visitation with her child was most probably forwarded to appellees sometime after December 2, 1998 and appellees never acknowledged her request. Appellant tried every available means to seek visitation with her child, but was unsuccessful.
Even if we were to agree with the trial court that the early Christmas gift was communication prior to December 2, 1998 and that seeking visitation is not "communicating" with the child, there was clear and convincing evidence that appellees interfered with appellant's ability to communicate with her child.
The purpose behind the statute it to enable children to be adopted by parents who will care for them when their natural parents have abandoned them. This case is unique because it does not involve a child who has had sporadic contact with his or her parent over the years or where an absent parent suddenly reappears when adoption is imminent. Here, the child is separated from her mother at birth because of incarceration, the mother provides a suitable home for her child during her absence, and a conflict arises with the child's temporary custodians making communication difficult. The Supreme Court of Ohio's objective requirement of "communication with the child" does not fit in this type of case. What should be significant in this type of case is whether the mother arranged for the care of her child and attempted to keep in contact with the custodians to ensure that they were properly caring for the child.
In the case before us, the mother formally gave appellees temporary custody. She tried to seek visitation with her child, but appellees never brought her child to her. Appellant tried to go through the same judge who arranged the temporary custody order to force visitation, but was unsuccessful. Appellant testified that appellees only responded once to her letters and would not cooperate with her visitation plans. They claim that appellant never called after August 22, 1998, but they also admit that they never called or communicated with her either to determine why the communication stopped. Because of the nature of their role as temporary custodians, appellees had a duty to keep in contact with the mother. Appellant has certainly presented sufficient evidence that she did not abandon her child. Rather, it indicates that she became upset with appellees and sought to find ways around them to find out about her child's well-being and to force visitation.
Wherefore, we find appellant's sole assignment of error well-taken.
Having found that the trial court did commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas, Probate Court, is reversed and remanded for further proceedings consistent with this decision. Pursuant to App.R. 24, appellees are hereby ordered to pay the court costs incurred on appeal.
JUDGMENT REVERSED.